EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ÁNGEL LUIS SERRANO PAGÁN, acusado y apelante.

*Número:* 17244    *Resuelto:* 18 de junio de 1962

686

*Benjamín Ortiz* y *Julio Suárez Garriga,* abogados del apelante;
*J. B. Fernández Badillo, Procurador General,* y *Jenaro
Marchand, Procurador General Auxiliar,* abogados de El
Pueblo, apelado.

Sala integrada por el Juez Presidente señor Negrón Fernández
y los Jueces Asociados señores Blanco Lugo y Dávila.

PER CURIAM: En este recurso se consolidaron cuatro
casos vistos en el tribunal de instancia por infracciones a

la Ley de la Bolita, 33 L.P.R.A. secs. 1247 *et seq.* Ángel Luis Serrano Pagán fue convicto de tres infracciones. Dos a la sección 10 de la ley que constituye un delito grave. Una a la sección 4 que es menos grave. Providencia Rivera Cruz fue convicta de infringir la sección 10.

I

Caso G 59–67

La acusación radicada en este caso el 26 de enero de 1959 le imputa al apelante que "allá en o para el período de tiempo comprendido entre el 22 de febrero de 1958 y el 5 de septiembre de 1958, ambas fechas inclusives . . . ilegal, voluntaria y maliciosamente actuó como director o administrador de una banca de bolita y bolipul, ejerciendo durante dicho período de tiempo funciones de director y administrador de los juegos ilegales conocidos como bolita y bolipul".

Para sostener su recurso el apelante señala cinco errores: (1) "al permitir al testigo Daniel Soler Valle que declarase sobre actuaciones del acusado dedicándose al juego de la bolita y bolipul el 5 de enero de 1958"; (2) "al permitir al testigo Daniel Soler Valle que declarase a base de una libreta en que él había puesto notas, sin haberse demostrado que él no recordaba los hechos"; (3) "al permitir al testigo Daniel Soler Valle declarar sobre el contenido de un documento que no se había presentado en evidencia"; (4) "al no permitir que el testigo de la defensa Guillermo García García declarase sobre manifestaciones del acusado en cuanto a que la casa donde se ocupó material de bolita no era residencia del acusado y (5) "al instruir al jurado en el sentido de que el juego de bolita era un estorbo público." ▮

1.—La cuestión levantada por el primer error fue objeto de objeción en el tribunal de instancia y el juez al instruir al jurado manifestó que "[l]a Corte los instruye para que no lo tomen en cuenta". Esta instrucción salvó la objeción

levantada. Además, el testimonio objetado lo que pretendía establecer era la fecha desde cuando el testigo vino en conocimiento de que el acusado se dedicaba a administrar una banca de bolita. ∎

2.—El segundo error no tiene mérito tampoco. El testigo dejó establecido que no recordaba los hechos. Manifestó a la pregunta del fiscal de porqué interesaba utilizar sus notas: "Señor fiscal, porque son muchas las fechas, muchos los sitios y son diferentes transacciones y sería difícil atender de memoria todas esas fechas". Además dejó establecido que intervenía con un gran número de personas. Al testigo pedir permiso para refrescar la memoria y utilizar las notas, claramente estableció que no recordaba los hechos. Véase 32 L.P.R.A. sec. 2146. ∎

3.—El testigo observó que el acusado tenía en su poder material de bolita. Sobre eso declaró, pero el apelante sostiene que debe presentar el material ya que "el art. 24 de la Ley de Evidencia dispone que no puede haber evidencia del contenido de un escrito fuera del propio escrito excepto, entre otros, en el caso de que el original obrase en poder de la parte contra quien se ofreciere la evidencia y dejare ésta de presentarlo, después de haber sido notificada convenientemente". Pero es que el testimonio iba dirigido a probar que él observó en posesión del acusado material de bolita. Su observación es evidencia primaria. 2 Wharton's *Criminal Evidence* § 607, pág. 501. Véase además *Pueblo* v. *Seda*, 82 D.P.R. 719 (1961), confirmado en 299 F.2d 576 (1er cir. 1962), certiorari denegado en 370 U. S. 904 (1962). [4]

4.—El cuarto error no fue cometido. Un testigo es preguntado sobre manifestaciones que le hizo el acusado la noche en que allanaron su casa y ocuparon material de bolita. Las manifestaciones consistían en que el acusado expresó que la casa allanada no era su residencia. El tribunal sentenciador no admitió ese testimonio. Fue correcta su decisión. Constituían declaraciones en beneficio propio. La manifes-

tación fue hecha en el cuartel, luego de ser arrestado el acusado, y de haber transcurrido un período de tiempo desde que se efectuó el allanamiento. Obviamente el acusado tuvo tiempo para reflexionar y meditar sobre la situación en que estaba envuelto. No estaban presentes la espontaneidad y la contemporaneidad requeridas para que manifestaciones como éstas sean admisibles.

5.—El juez al instruir al jurado manifestó:

"La acusación fue radicada el veintiséis de enero de mil novecientos veintinueve [sic]. La ley, o la sección que se alega infringida en este caso, dispone lo siguiente: 'Todo dueño, apoderado, encargado, agente, director o administrador de los juegos prohibidos por la sección 1247 a 1257, de este título, será reo de delito grave'.

"Las secciones 1247 a 1257 del título treinta y tres E, [sic] específicamente la primera, dice: 'Por la presente se declara estorbo público los juegos generalmente conocidos como bolita, bolipool, combinaciones clandestinas relacionadas con los 'pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas en el Estado Libre Asociado de Puerto Rico y su jurisdicción territorial y marítima.' De manera que la primera sección que les leí, deben considerarla en relación con la última que les leí. La primera se refiere a todo dueño, apoderado, agente, encargado, director o administrador de esos juegos que la otra sección declara estorbo público y que incluye juego de bolita y bolipool."

Entonces pasa a instruirlos sobre los elementos del delito pero no hace referencia a su caracterización como estorbo público. ■

El juez no hizo otra cosa que informarle al jurado lo que la ley expone en cuanto a que considera el juego de bolita como un estorbo público. Lo hizo para darle un cuadro completo de lo que es la ley. La situación no se diferencia de la del delito contra natura que el código lo clasifica como "infame" y al instruir al jurado se hace referencia a esa circunstancia. Es un hecho que la Asamblea Legislativa ha declarado al juego de bolita como un estorbo público. El

jurado debe conocer ese hecho. En forma alguna esto perjudica al acusado, pues la Corte le instruyó que lo que va a decidir es si el Estado probó los hechos que se le imputan, y si tiene duda razonable de si el acusado los cometió o no, deben absolverlo. Eso era lo importante.

## II

### Caso M. 58–652

El apelante fue acusado de infringir la sección 4 de la Ley 220 de 1948. Le imputa dos errores al tribunal sentenciador: (1) "declarar sin lugar la petición del acusado al efecto de que el caso se viese ante un jurado"; (2) "al declarar sin lugar la moción de absolución perentoria presentada por la defensa". ■

La cuestión que plantea el primer error ya lo resolvimos en *Pueblo* v. *Pérez Méndez*, 83 D.P.R. 228 (1961). ■

El segundo error imputado no se cometió. El apelante presentó una moción de absolución perentoria. La fundó en primer término en que en la acusación se le imputaba que tenía en su posesión seis listas conteniendo números de bolita, mientras que la prueba estableció que solamente tenía en su posesión una, y esto constituye una incongruencia fatal entre la acusación y la prueba. La frivolidad manifestada de la imputación hace innecesaria su discusión. Insiste el acusado en que también existió incongruencia porque la prueba demostró que hubo una venta y a él lo acusaron de posesión. Pero a él lo acusaron de poseer listas de bolita y la prueba demostró esa posesión. Eso era suficiente.

## III

### Casos G 59–427 y 428

Estos casos son por infracción a la sección 10 de la Ley. Uno es contra Ángel Luis Serrano Pagán. El otro contra Providencia Rivera Cruz. Los dos surgieron de la misma transacción.

Se apuntan doce errores. Todos excepto el primero son comunes a ambos recursos.

1.—En la parte I de esta opinión consideramos la apelación interpuesta por Serrano Pagán en otro caso de violación a la sección 10. Los hechos que se le imputaron en aquél como constitutivos de operar y administrar una banca de bolita, ocurrieron durante el período desde el 22 de febrero al 5 de septiembre de 1958. Los hechos que se le imputan en la acusación radicada en éste ocurrieron dentro del período del 2 al 11 de octubre del mismo año. La acusación en el primero fue radicada el 26 de enero de 1959. En el segundo la radicación fue el 2 de junio de 1959.

El acusado sostiene que operar y administrar una banca de bolita es un delito continuo y que como es un delito continuo "no puede ser fraccionado como se ha pretendido en estos casos al dividir en dos acusaciones una el período de tiempo de febrero a septiembre y otra del 2 al 12 (sic) de octubre. El ministerio público había escogido o seleccionado previamente acusar por un delito continuo entre febrero y septiembre y claramente no debía tener la facultad de dividir en grupo las acusaciones". ■

No es un delito continuo el operar una banca de bolita. El hecho de que la infracción de una ley pueda extenderse por un período más o menos largo, no convierte el delito en uno continuo. En *Pueblo* v. *Burgos*, 75 D.P.R. 551 (1953), expusimos lo que constituye un delito continuo. Dijimos a ese efecto: ■

"Un delito continuo es una transacción o una serie de actos continuos puestos en movimiento por un solo impulso y operados por una fuerza no intermitente, no importa cuán largo sea el tiempo que pueda ocupar. *State* v. *Johnson,* 194 S.E. 319, 322; *United States* v. *Midstate Co.,* 306 U.S. 161. De acuerdo con el tratadista Wharton, cuando el impulso es uno solo, procede una sola acusación, no importa por cuanto tiempo pueda continuar la acción, más si separadamente se dan impulsos sucesivos, aun cuando se unan en una corriente común de acción,

proceden acusaciones separadas. Añade dicho tratadista que la norma a aplicar es el determinar si lo que se prohibe son los actos individuales o es el curso de acción que estos constituyen, siendo punibles, en el primer caso, cada acto separadamente mientras que en el segundo caso sólo puede haber una penalidad. 1 Wharton's *Criminal Law*, sección 34, página 52; *Blockburger* v. *United States*, 284 U.S. 299, 302, 76 L. ed. 306–308. Se ha dicho también que 'continuo' significa perdurable, que no termina con un solo acto o hecho; que subsiste por un período de tiempo definido o que tiene el propósito de abarcar o de ser aplicable a obligaciones y acontecimientos sucesivos similares, y que un delito continuo, es por lo tanto, una infracción a la ley penal que no termina con un solo hecho o acto sino que subsiste por un período de tiempo definido y cuyo propósito es que abarque o se aplique a obligaciones o acontecimientos sucesivos similares."

Claramente operar y administrar una banca de bolita no es un delito continuo. *Commonwealth* v. *Grosso*, 162 A.2d 421 (Penn. 1960) confirmado en 165 A.2d 73 (1960). Cada día que se opera es un delito distinto. Usando los términos que empleamos en *Burgos*, cada día que se opera la banca es un impulso separado. Supongamos que una persona contrate a otra para que le opere y administre una banca de bolita, y el primer día que asume sus funciones es sorprendido recibiendo las colectas, contando el dinero, y entregando nuevo material para el próximo día. Obviamente se ha cometido el delito a pesar de que fue precisamente el primer día que fue sorprendido. Porque lo que la ley prohibe es el acto individual y no el curso de acción que estos constituyen. Claro está que nada le impide al Estado imputar el delito como ocurrido durante un período determinado de tiempo, pero en ese caso, luego no podría acusar imputando la comisión del delito en un día específico comprendido dentro del período por el cual fue acusado anteriormente. *People* v. *Bechtel*, 260 P.2d 31 (Cal. 1953); *People* v. *Krupnick*, 332 P.2d 720 (Cal. 1958).

2.—El segundo error que consistió en permitir que el testigo Santos Rodríguez declarara que ambos acusados eran marido y mujer, no vemos la pertinencia que pueda tener para la resolución de este recurso, aparte del hecho de que la defensa no objetó cuando por primera vez el testigo hizo la manifestación.

3.—El testigo Santos Rodríguez era un agente encubierto. Se ganó la confianza de los acusados y éstos le entregaban libretas usadas en el juego de bolita para que éste las vendiera al público. El testigo admitió que ninguna de las libretas las vendió al público. Pagó por ella con el dinero que le entregaron sus superiores. Simulaba que había hecho colectas. ▪

Sostiene el apelante que estos hechos presentan un caso en que el agente incitó la comisión de un delito con el fin de luego acusarlos de ese delito (*entrapment*). Pasa entonces el acusado a apuntar que "[e]l propio juez que presidió la vista del caso indicó que en otro caso él había absuelto a acusados si las listas de bolita habían sido preparadas por el agente encubierto y si el dinero había sido recibido de la policía, indicando el juez que si así es y esa es la única prueba que hay del delito, el Tribunal entiende que no hay prueba del delito. (Pág. 31.)"

En cuanto a la defensa de "*entrapment*" la prueba revela que los acusados le entregaban al testigo material de bolita por voluntad de ellos y no porque el testigo le indujo a ellos que se dedicaran a operar la banca. El propio juez que presidió la vista lo expresó así a la pág. 32 de la Transcripción de Evidencia:

"Pero en esta situación es una distuación [sic] completamente distinta, porque aquí hay prueba de que los acusados reclutaron a este agente para vender bolita y bolipul y entonces le entregaron, por lo menos en dos casos, libretas de bolipul que no fueron preparados por el policía ni son producto de la imaginación del policía, sino libretas impresas de bolipul que según declara el testigo de cargo las tenían los acusados y se

las entregaron los acusados para que procediera a venderlas pensando que este agente encubierto era un bolitero. No sabían que era un policía. Aquí no se está imputando la totalidad de venta y no es necesario que se consume ninguna venta para que quede consumado el delito. La mera distribución por los acusados de libretas de bolipul es un acto propio de dirección o administración de una banca de bolita..."

Repetimos aquí lo que expresamos en *Seda* a la pág. 730:

"No hay duda de que el agente encubierto es un **arma de** investigación que es necesario utilizar en ciertos delitos, que por su característica esencial de clandestinidad, permanecerían impunes si no se contara con este método. Todo cuanto se requiere es que la actuación del agente no incite o induzca la intención criminal en la mente del acusado, aunque facilite la comisión del delito. *Pueblo* v. *Pérez,* 80 D.P.R. 300 (1958); *Cook* v. *United States,* 193 F.2d 373 (D.C. 1951); *Sorrells* v. *United States,* 287 U.S. 435 (1932); *United States* v. *Sherman,* 200 F.2d 880 (2 C.C.A. 1952); Cf. *United States* v. *Masciale,* 236 F.2d 601 (2 C.C.A. 1956); *Entrapment to commit offense with respect to gambling or lotteries,* 31 A.L.R.2d 1212 (1953). En forma tímida, el apelante parece insinuar que el agente sembró en su mente la intención criminal para que cometiera el delito y luego arrestarle (*entrapment*). Los hechos no justifican tal conclusión, y más bien, considerada la asiduidad de las infracciones, demuestran que el acusado era un colector regular de apuestas para el juego ilegal de bolita." ■

Además, como explicamos en *Pueblo* v. *Pérez Méndez,* supra, el delito imputado a los acusados no requiere una intención específica pues se trata de un delito relacionado con el bienestar público.

4.—Sostienen los apelantes que constituyó error el permitir que el Fiscal en su informe al jurado hiciera referencia a cómo se juega la bolita, "no habiendo habido prueba sobre ese extremo". ■

No tienen razón los apelantes. Además de que es de conocimiento público como se juega la bolita, la prueba establece mediante la explicación que dio el agente, la forma en que se lleva a cabo ese juego. ■

5.—El quinto de los errores apuntados se refiere a que el juez manifestó que un testigo había explicado adecuadamente en forma sencilla cómo se juega la bolita y que por eso había invadido la función del jurado, quien era el que tenía que decidir si la explicación era adecuada o no. No se cometió el error. El juez no invadió la función del jurado. Así lo explicó en una de sus instrucciones:

"Ahora, el compañero Suárez Garriga interrumpió al Fiscal para objetar que el Fiscal haga referencia a esa parte del testimonio del testigo. El tribunal tuvo que resolver la cuestión planteada al darle la razón al Fiscal, porque de acuerdo con las notas de la corte, las notas que tomó el juez coinciden con la transcripción del récord que leyó el compañero Suárez Garriga que le adelantó el taquígrafo, coinciden perfectamente en casi todos sus extremos. El tribunal entendió y resolvió que se había descrito cómo se juega el juego de la bolita en Puerto Rico. Claro, el jurado es el que va a apreciar el testimonio del testigo y le van a dar el crédito que a juicio del jurado merezca ese testigo. En eso el tribunal no puede intervenir. Esa es función exclusiva del jurado. Eso no quiere decir lo que ha dicho el juez, que el jurado tenga que creer que se ha establecido cómo se juega la bolita. La corte lo que está aclarando fue lo que declaró el testigo, aclarando eso. Ahora la apreciación del testimonio del testigo corresponde y es de la incumbencia exclusiva del jurado, que son los llamados a determinar si están debidamente ilustrados, satisfechos con la declaración del testigo en cuanto a la forma como se juega la bolita, y si la creen o no les merece crédito es una cuestión exclusivamente de ustedes y no de este juez." ▬

6.—Erróneamente el fiscal hizo referencia en su informe al hecho de que el acusado había sido convicto anteriormente de un delito de bolita. El apelante sostiene que no obstante el juez haber instruído al jurado que no tuviera en cuenta ese hecho, tal instrucción no curó ni subsanó el error, que fue uno de gran perjuicio para el acusado. Él instruyó al jurado y nos parece que eso era suficiente:

"El Fiscal dijo eso. La corte instruye al jurado que no deberán tener para nada en cuenta ninguna manifestación del

Fiscal o la manifestación que hizo el fiscal sobre una convicción anterior del acusado de este mismo delito, ya que él está siendo en la actualidad juzgado por los hechos que están expuestos en la acusación que está ante el tribunal en el día de hoy y no por ningún otro hecho que no tenga relación alguna con estos hechos. Ustedes no deberán tomar para nada en cuenta lo que ha dicho el Fiscal, de que el acusado fue convicto de otro delito de esta naturaleza. Para nada deberán ustedes tomar en cuenta esa manifestación del Fiscal. De modo que ustedes deben resolver este caso de acuerdo con la prueba que se practique en relación con los hechos específicos que se le imputan en esta acusación únicamente."

7.—El séptimo error ya fue objeto de discusión. No cometió error el juez al informarle al jurado que la bolita es un estorbo público.

8.–9.—Los errores octavo y noveno los consideramos conjuntamente. El octavo lee así: "Cometió error el juez sentenciador al indicarle al jurado en sus instrucciones que no era necesario que el Pueblo probase todos y cada uno de los actos alegados en la acusación", y el noveno: "[c]ometió error el Tribunal sentenciador al instruirle al jurado que a pesar de que la prueba no había establecido que se hubiera realizado venta alguna, como cuestión de derecho el Tribunal instruyó al jurado que no era necesario para demostrar el delito que se hubiere realizado venta alguna".

La acusación radicada imputaba a los acusados el que "ilegal, voluntaria y maliciosamente ejercieron actos de administradores, banqueros y directores de los juegos ilegales conocidos por bolita y bolipul, tales como entregar libretas de bolipul para ser vendidas y recibir cantidades de dinero producto de las ventas de las referidas libretas de los juegos ilegales conocidos como bolita y bolipul".

Como se observará la acusación luego de exponer que los apelantes actuaban como administradores da unos ejemplos de los actos que realizaban y al efecto dice "tales como", sin que el Estado esté en la obligación de establecer todos los

actos que enumera. Basta con uno solo si tal acto constituye la administración u operación de una banca. El acto específico que quedó establecido por la prueba constituye un acto de administración—repartir material de bolita. En este caso fue a un agente y el hecho de que él no lo vendiera al público no afecta la responsabilidad de los acusados.

10.—El décimo error, es una modalidad de la cuestión que ya resolvimos en el caso de *Seda* sobre las actuaciones del agente encubierto. ▉

11.—El Undécimo de los errores imputa al juez de instancia "no instruir al jurado que para que pudiese declarar culpable a los acusados el jurado debía haber llegado a la conclusión de que los acusados actuaron de común acuerdo y conjuntamente".

Copiamos las instrucciones del juez de instancia sobre esta cuestión:

"Aquí hay dos acusados, o sea, se trata de dos acusados, y debo instruirles que según el Artículo 36 del Código Penal, todas las personas complicadas en la comisión de un delito, ya cometieren el acto constitutivo del delito directamente, o ayudaren o instigaren a cometerlo, son principales o autores del delito cometido. Y cuando dos o más personas se unen para realizar un acto criminal, ya sea mediante la física violación de uno o de todos ellos, procediendo separada o colectivamente, cada individuo cuya voluntad ha contribuido a la realización del acto criminoso ante los ojos de la ley es tan responsable por todas las consecuencias del acto cometido como si lo hubiera realizado él solo. Y cuando se trata de dos o más acusados, debo decirles, como cuestión de derecho, que ustedes no están obligados a rendir el mismo veredicto en cuanto a ambos acusados. Ustedes resuelven, de acuerdo con la apreciación que hagan de la prueba en cuanto a cada acusado en particular. Por eso deben tener con ustedes, y tendrán con ustedes dos modelos de veredicto. Ustedes harán la apreciación y la determinación en cuanto a la inocencia o culpabilidad de cada acusado por separado."

".

"Si los señores del jurado, por la prueba practicada, entienden que se ha establecido, a satisfacción de ustedes, más allá de duda razonable, que los acusados Ángel Luis Serrano Pagán, conocido por Chucho, y Providencia Rivera Cruz, conocida por Provi, actuando conjuntamente y de común acuerdo, durante el período comprendido entre el 2 de octubre de 1958 y el 11 de octubre de 1958, ambas fechas inclusive, en la barriada La Perla, de San Juan, Puerto Rico, ilegal, voluntaria y maliciosamente ejercieron actos propios de administradores, directores o banqueros de los juegos ilegales de la bolita o bolipool, distribuyendo libretas de bolipul para la venta, y/o recibieron dinero producto de la venta de bolita o bolipul, entonces es el deber de ustedes traer un veredicto de culpabilidad contra ambos acusados, o contra cualquiera de ellos con respecto al cual ustedes entiendan que se ha establecido, a satisfacción de ustedes, esos hechos, un veredicto de culpabilidad, repito de infracción a la Sección 10 de la Ley 220 de mayo de 1948, según ha sido subsiguientemente enmendada, conocida como Ley de la Bolita."

Esa instrucción está de acuerdo con el criterio expresado por este Tribunal en *Pueblo* v. *Márquez,* 45 D.P.R. 333, 340 (1933) donde expresamos:

"En nuestro actual sistema todas las personas complicadas en la comisión de un crimen (artículo 36 del Código Penal) y que directamente cometieren el acto constitutivo del delito, o no hallándose presentes, hubieren aconsejado su comisión o incitado a ella; y todas las personas que aconsejaren o incitaren a menores de catorce años, lunáticos o idiotas a cometer algún crimen; o que, por medio de fraude, artificio, o violencia, ocasionaren la embriaguez de otra persona con el fin de hacerle cometer un crimen, son principales o autores en el crimen cometido. En él se califica de cómplices a los que en el sistema anterior se conocían como encubridores. El designio común o la actuación conjunta que tiene en mente la defensa, sólo se exige para determinados delitos como el de conspiración.

Además, si los acusados entendían que la acusación no era suficientemente concreta al no expresar qué participación tomó cada uno de ellos en la comisión del delito, debieron solicitar un pliego de particulares o pedir que se hiciera más específica,

y no lo hicieron. No se discuten ahora defectos en la acusación sino errores en las instrucciones."

Estuvo pues correcto el juez sentenciador en sus instrucciones.

12.—El duodécimo error está basado en la premisa de que no hubo prueba al efecto de cómo se jugaba la bolita. Pero ya hemos visto que hubo prueba a ese fin. Y si no la hubiera habido el error sería frívolo.

*No se cometieron ninguno de los errores señalados.*

---

### RESOLUCIÓN

Sala integrada por el Juez Presidente señor Negrón Fernández y los Jueces Asociados señores Blanco Lugo y Dávila.

San Juan, Puerto Rico, a 1ro de marzo de 1963

Consideradas todas las circunstancias presentes en los casos G-59-67 (Felony) y G-59-427 y 428 (Felony) del Tribunal Superior, Sala de San Juan, que consolidados fueron resueltos por opinión per curiam y sentencia de 18 de junio de 1962 confirmando las dictadas por el tribunal de instancia, procede modificar nuestra sentencia para que las dictadas contra Ángel Luis Serrano Pagán en los referidos casos se cumplan concurrentemente. La sentencia impuesta en el caso M-58-652 se cumplirá en forma consecutiva. Se declaran sin lugar los otros planteamientos contenidos en la moción de reconsideración. Se dictará sentencia de conformidad.

Lo acordó el Tribunal y firma el señor Juez Presidente. El Juez Asociado señor Blanco Lugo concurre en el resultado.

(Fdo.) Luis Negrón Fernández,
*Juez Presidente.*

Certifico:

(Fdo.) Ignacio Rivera,
*Secretario.*

Voto concurrente del Juez Asociado señor Blanco Lugo

San Juan, Puerto Rico, a 1ro de marzo de 1963

Concurro con el resultado anunciado por el Tribunal en la resolución de la moción de reconsideración. Deseo consignar expresamente que, a mi juicio, el delito castigado por la sección 10 de la Ley Núm. 220 de 15 de mayo de 1948, 33 L.P.R.A. sec. 1256—ser dueño, apoderado, agente, encargado, director o administrador de un juego de bolita, bolipul, combinaciones clandestinas relacionadas con los pools o bancas de los hipódromos de Puerto Rico y loterías clandestinas—es uno de naturaleza continua, y que, por tanto, la radicación de la acusación en 26 de enero de 1959 impedía que se procesara al acusado separadamente y como un delito distinto por hechos ocurridos antes de dicha fecha. Véanse, *Thomas v. District of Columbia*, 161 A.2d 52 (1960); *Sherman v. State*, 77 So.2d 495 (Ala. 1954); *Usrey v. State*, 56 So.2d 790 (Ala. 1952); *State v. Johnson*, 194 S.E. 319 (N.C. 1937); *People v. Beverly*, 225 N.W. 481 (Mich. 1929); *State v. Roberts*, 93 So. 95 (La. 1922); *Ex parte Snow*, 120 U.S. 273, 284 (1886); y especialmente *State v. Mills*, 86 So.2d 895, 903 (La. 1956), en donde se dice que "defendants are charged with gambling as a business which by its very nature is a continuing transaction."